LOEB & LOEB LLP
JOHN A. PISKORA (NJ ID 005412001)
jpiskora@loeb.com
FRANK D. D'ANGELO (*pro hac vice forthcoming*)
fdangelo@loeb.com
JEFFREY C. PRYSTOWSKY (*pro hac vice forthcoming*)
jprystowsky@loeb.com
345 Park Avenue
New York, NY  10154
Telephone:  +1 212-407-4000
Facsimile:   +1 212-407-4990

Attorneys for Plaintiffs,
HYBE Co. Ltd., BIGHIT MUSIC Co. Ltd.,
and HYBE America, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HYBE CO. LTD. F/K/A/ BIG HIT ENTERTAINMENT CO. LTD., BIG HIT MUSIC CO. LTD. AND HYBE AMERICA INC.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JOHN DOES 1-100, JANE DOES 1-100, AND XYZ COMPANIES 1-100,**<br><br>**Defendants.** | **Case No. _____**<br><br>**COMPLAINT** |

Plaintiffs HYBE Co. Ltd. f/k/a Big Hit Entertainment Co. Ltd. ("HYBE"), BIGHIT MUSIC Co. Ltd. ("BIGHIT"), and HYBE America Inc. ("HYBE America") (collectively, "Plaintiffs"), by their undersigned attorneys, complaining of Defendants herein, allege as follows:

## JURISDICTION AND VENUE

1.      This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1331 and 1338.  Venue in this district is proper under 28 U.S.C. § 1391(b) because Defendants will be selling and distributing unauthorized goods at BTS's upcoming scheduled concert performances at MetLife Stadium, in East Rutherford, New Jersey on August 1 and 2, 2026 (the "East Rutherford Shows").

## PARTIES

2.      Plaintiff HYBE is a music-based entertainment lifestyle company with its principal place of business in Seoul, South Korea, and parent company to plaintiffs HYBE America and BIGHIT.

3.      Plaintiff HYBE America is a U.S.-based affiliate and wholly-owned subsidiary of HYBE, with its principal place of business in Los Angeles, California.

4.      Plaintiff BIGHIT is one of the world's leading record labels, with its principal place of business in Seoul, South Korea.  BIGHIT manages the musical

performing group known as BTS ("BTS" or the "Artist") and owns the rights in and to BTS's name, logos, likenesses and registered trademarks (collectively, the "Trademark"), which it manages and exploits through its exclusive management of BTS.

5.     BIGHIT has conveyed to HYBE the exclusive rights to exploit the Trademark pertaining to BTS, including for the purposes of producing and planning the group's concert performances as well as producing, distributing, and selling various types of music-related merchandise.

6.     HYBE sells, and licenses the sale of, merchandise through retail establishments and at BTS's concert performances.  The merchandise sold by HYBE and/or its licensees at BTS's concerts includes, without limitation, tour and program books, T-shirts and other clothing, posters, photographs, bags, hats, light sticks, keyrings, and stickers (collectively, the "Tour Merchandise").  HYBE holds the exclusive rights to sell Tour Merchandise in connection with BTS's scheduled concert performances at MetLife Stadium on August 1 and 2, 2026.  BTS's name has been used for years to identify it as a K-pop (or "Korean pop") group and boy band in all phases of the entertainment industry and to distinguish BTS from all other such groups.

7.     Defendants John Does 1-100, Jane Does 1-100 and XYZ Companies 1-100 who are sued herein under fictitious names because their true names and

3

capacities are unknown at this time.  This complaint will be amended when their true names and capacities are ascertained.

8.    The individual defendants will be present in and about the District of New Jersey in connection with the claims asserted below and are or will be subject to the jurisdiction of this Court.

9.    Defendants XYZ Companies, through their agents, servants and employees, are or will be present in and about the District of New Jersey and are or will be subject to the jurisdiction of this Court.  This complaint will be amended when their true name is ascertained.

10.    Defendants, and each of them, are individuals and business entities who, upon information and belief, are acting in concert and active participation with each other in committing the wrongful acts alleged herein.

11.    Defendants John Does 1-100, Jane Does 1-100, and XYZ Companies are hereinafter referred to collectively as "Defendants."

## THE BACKGROUND OF THE ACTION

12.    BTS is one of the most popular and successful musical acts worldwide. It has received 43 Mnet Asian Music Awards, 40 Melon Music Awards, 31 Golden Disc Awards, 27 Seoul Music Awards, seven Korean Music Awards, 27 Gaon Chart Music Awards, twelve *Billboard* Music Awards, fourteen American Music Awards, five Grammy nominations, seven Teen Choice awards, and ten MTV Video Music

Awards, among countless other accolades.  Having sold over 44 million albums on the Gaon Music Chart, BTS is the best-selling artist in South Korean history.  In South Korea alone, BTS holds five Multi-Million albums and five Platinum streaming singles.  As the first Korean group to receive RIAA certification, BTS has one 5x Platinum single, one Double Platinum single, three Platinum albums, nine Platinum singles, ten Gold singles, and one Gold album in the U.S.  Its last seven albums debuted at number one on the U.S. *Billboard* 200—making them the first Korean albums to top the U.S. albums chart and the highest-charting albums by an Asian musical act in the U.S. ever.

13.    BTS also has an ubiquitous social media presence and cultural influence.  As of 2022, the group has attained 25 Guinness World Records, including the world record for most Twitter engagements.  It has spent 210 weeks at #1 on the *Billboard* Social 50 chart, which tracks the most active musical artists on the world's leading social networking services.  The group's members have been awarded a fifth-class Hwagwan Order of Cultural Merit from the President of South Korea for their contributions in spreading Korean culture and language, and they are widely credited with having revitalized the Korean music industry and boosted musical industry revenues worldwide.  It has been estimated that BTS's economic impact on South Korea amounts to several billion dollars, and its ticket sales in Korea and abroad have shattered records and brought millions of dollars to cities in which the

5

group has performed live.  President Biden invited BTS to the White House in 2022 to discuss the importance of standing against anti-Asian hate crimes.

14.    On March 20, 2026, BTS released its fifth Korean-language studio album, *Arirang* (the "Album").  The Album is the group's first release since they went on hiatus for each member to fulfill their mandatory military service obligations in South Korea, resulting in a multi-year pause in full group activities. During that period, fans patiently awaited their return to touring activities.  Although solo releases and some individual touring helped with demand, a full group comeback with a new album and tour has produced an exceptional, unparalleled, concentrated spike in demand.

15.    As a result, *Arirang* debuted at number one on the U.S. Billboard 200, and its 14 tracks filled the top 14 spots of Spotify's global top-50 chart on its first day.  The Album received a total of 110 million streams on Spotify in its first 24 hours—the most first-day Spotify streams for any 2026 album—and, on Apple Music, it broke the record for most first-day streams ever for a pop group's album.

16.    To coincide with the Album's release, the Artist launched a world tour, styled as the BTS WORLD TOUR ARIRANG (the "Tour"), which includes the following tour stops and concert performances at some of the largest and most prominent venues in the United States, in addition to several others outside the U.S.:

6

a.  Tampa, Florida: Raymond James Stadium, April 25, 26, and 28, 2026;

b.  El Paso, Texas: Sun Bowl Stadium, May 2 and 3, 2026;

c.  Stanford, California: Stanford Stadium, May 16, 17, and 19, 2026;

d.  Las Vegas, Nevada: Allegiant Stadium, May 23-24 and 27-28, 2026;

e.  **East Rutherford, New Jersey:  MetLife Stadium, August 1-2, 2026**;

f.  Foxborough, Massachusetts: Gillette Stadium, August 5-6, 2026;

g.  Baltimore, Maryland: M&T Bank Stadium, August 10-11, 2026;

h.  Arlington, Texas: AT&T Stadium, August 15-16, 2026;

i.  Chicago, Illinois: Soldier Field, August 27-28, 2026; and

j.  Los Angeles, California: SoFi Stadium, September 1-2 and 5-6, 2026.

17.  Plaintiffs bring this action to prevent the sale of counterfeit and infringing "bootleg" tour merchandise in connection with BTS's concert performances at MetLife Stadium and future U.S. stops on the current Tour, both at

the concert venues themselves and at official vending sites that will be operated nearby.  If such counterfeit and infringing activities were permitted to continue, it would cause substantial harm to Plaintiffs, their licensees, and BTS.

18.    Defendants have already sold and distributed unauthorized, infringing, and counterfeit t-shirts, posters, and other merchandise ("Bootleg Merchandise") during the current U.S. Tour, and, absent injunctive relief, will continue to do so in the vicinity of the East Rutherford Shows before, during, and after the performances, as well as at subsequent U.S. concerts on the Tour.  The Bootleg Merchandise bears the Trademark at issue.  Defendants have engaged in such conduct on every date of the current U.S. Tour, as well as during prior BTS tours.

19.    The Bootleg Merchandise is of the same general appearance as Plaintiffs' official Tour Merchandise and is likely to cause confusion among prospective purchasers.  Defendants' Bootleg Merchandise is not authorized by the Artist or Plaintiffs.

20.    HYBE previously obtained identical relief in connection with several of the Artist's concert performances in 2019 and 2021, including in Los Angeles County Superior Court (*HYBE Co. Ltd. f/k/a Big Hit Entertainment Co. Ltd. et al. v. John Does 1-100 et al.*, Case No. 21AHCV00077 (Cal. Super. Ct. filed November 5, 2021); *Big Hit Entertainment Co. Ltd. v. John Does 1-100 et al.*, Case No. 19GDCV00547 (Cal. Super. Ct. filed May 1, 2019)), and in the U.S. District Court

for the Northern District of Illinois (*Big Hit Entertainment Co. Ltd. v. Various John Does et al.*, Case No. 19 CV 03070 (N.D. Ill., filed May 7, 2019)).[1]  In each of those actions, the courts granted a motion for a Temporary Restraining Order and Order of Seizure, pursuant to which HYBE and its authorized representatives seized a substantial amount of counterfeit and infringing Bootleg Merchandise from bootleggers in the vicinity of BTS's concert performances, including at MetLife Stadium on May 18, and 19, 2019.

21.     Plaintiffs now seek the same relief granted by those courts in 2019 and 2021, albeit in connection with BTS's upcoming scheduled concert performances.

### FIRST CAUSE OF ACTION
**(Violation of the Lanham Act)**

22.     Plaintiffs repeat and reallege each allegation set forth in the foregoing paragraphs, as though fully set forth herein.

23.     BTS has used its inherently distinctive name and Trademark to identify officially authorized goods and services and to distinguish it from other musical performing groups.  BTS has, among other things, prominently displayed the Trademark in advertising and promotional material; in and on compact discs, audiotape boxes, and streaming services; and on merchandise, including the Tour Merchandise.  Plaintiffs and BTS have realized, and expect to realize, substantial

---

[1] At the time of the 2019 proceedings, HYBE was known as "Big Hit Entertainment Co. Ltd."

income from the sale of merchandise bearing BTS's Trademark (including the Tour Merchandise), and hundreds of thousands of such items have been sold throughout the United States.

24.    As a result of the foregoing, BTS's Trademark has developed and now possesses secondary and distinctive meaning to purchasers of the Tour Merchandise.

25.    BTS has achieved wide renown during its career in the music industry. Its Trademark has been used in interstate commerce on and for the purpose of identifying, among other things, Tour Merchandise, including T-shirts and other apparel.

26.    BTS has a decidedly strong and loyal following among concert-goers, record buyers, and subscribers to streaming services.  It has appeared—and will appear—in concerts at major arenas and stadiums in the United States and around the world and has been seen and heard in concert by millions of popular music enthusiasts.

27.    In connection with the East Rutherford Shows and other U.S. concert performances on the Tour, HYBE has licensed the Trademark for use in and on official Tour Merchandise to be sold in the vicinity of the tour venues.  Specifically, HYBE has licensed such rights to its wholly-owned U.S. subsidiary HYBE America, which has entered into an agreement with Amazon.com Services, LLC authorizing that entity to sell official Tour Merchandise.

28.    Defendants have engaged, and will continue to engage, in the unauthorized manufacture, distribution and sale of the Bootleg Merchandise in interstate commerce, in the vicinity of the East Rutherford Shows, and will continue to do so on future stops on the Tour to the great injury of Plaintiffs and the Artist.

29.    The Bootleg Merchandise is of the same general appearance as the Tour Merchandise and is likely to confuse prospective purchasers as to the source or sponsorship of such Bootleg Merchandise.

30.    The Bootleg Merchandise is generally of inferior quality.  The sale of such merchandise is likely to injure the reputation of BTS and Plaintiffs, which have developed the reputation for high quality associated with the Tour Merchandise by virtue of BTS's public performances and Plaintiffs' sale of officially licensed BTS merchandise in connection with such performances.

31.    The manufacture, distribution, and sale of Bootleg Merchandise by Defendants, and those acting in concert with Defendants, constitutes a false designation of the source of origin of such goods and falsely describes and represents such merchandise, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

32.    The aforesaid acts by Defendants are likely to cause the purchasing public to believe that the sale of such Bootleg Merchandise is authorized, sponsored, or approved by BTS and Plaintiffs and that such Bootleg Merchandise is subject to

11

the same quality control and regulation required by BTS and Plaintiffs.  It also injures Artist and Plaintiffs in that Defendants do not have to pay any royalty for these unlawful sales.

33.    The use by Defendants and others of BTS's Trademark constitutes an attempt to palm off and appropriate to themselves BTS's and Plaintiffs' exclusive rights therein.

34.    Defendants have engaged, and will continue to engage, in such unauthorized activities in this state to the great injury of Plaintiffs and BTS.

35.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered injury in fact, as described herein.

36.    Plaintiffs have no adequate remedy at law and have suffered, and will continue to suffer, irreparable harm and damage as a result of Defendants' aforesaid acts, which, if not enjoined, will cause injury and monetary loss in an amount presently incalculable.

## SECOND CAUSE OF ACTION
### (Unfair Competition)

37.    Plaintiffs repeat and reallege each allegation set forth in the foregoing paragraphs, as though fully set forth herein.

38.    The aforesaid acts by Defendants have been, and will continue to be, committed with full knowledge of the rights of Plaintiffs and BTS, and with the intent and effect of misleading and confusing the public and misappropriating and

12

trading upon the property rights, goodwill and reputation inhering to the name and likeness of BTS.

39.     Such misappropriation and unfair competition will interfere with Plaintiffs' rights and ability to exploit the commercial value of BTS's Trademark.

40.     Plaintiffs have no adequate remedy at law and have suffered, and will continue to suffer, irreparable harm and damage as a result of Defendants' aforesaid acts, which, if not enjoined, will cause injury and monetary loss in an amount presently incalculable.

## THIRD CAUSE OF ACTION
### (Violation of the Right of Publicity)

41.     Plaintiffs repeat and reallege each allegation set forth in the foregoing paragraphs, as though fully set forth herein.

42.     By virtue of the expenditures of time, effort, and talent by BTS and Plaintiffs in advertising, publicizing, and promoting the accomplishments of BTS and through extensive commercial exploitation of the group's and its members' public personas, BTS and Plaintiffs have created rights of publicity in BTS's name.

43.     By virtue of assignment from BTS, Plaintiffs are the owners and exclusive licensees of BTS's and its members' rights of publicity in their names and likenesses. Defendants have used, and will continue to use, BTS's Trademark without authorization and for purposes of trade and for other commercial purposes.

44. The aforesaid uses of the Trademark by Defendants constitute infringements of such rights of publicity pursuant to New Jersey common law.[2]

45. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered injury in fact, as described herein.

46. Plaintiffs have no adequate remedy at law and have suffered, and will continue to suffer, irreparable harm and damage as a result of Defendants' aforesaid acts, which, if not enjoined, will cause injury and monetary loss in an amount presently incalculable.

### FOURTH CAUSE OF ACTION
**(Violation Of New Jersey Unfair Competition Act)**

47. Plaintiffs repeat and reallege each allegation set forth in the foregoing paragraphs, as though fully set forth herein.

48. Plaintiffs' claim hereunder arises under the New Jersey Unfair Competition Act, N.J.S.A. §§ 56:4-1 *et seq*.

49. The aforesaid acts by Defendants constitute deceptive trade practices in violation of N.J.S.A. § 56:4-1 insofar as Defendants are knowingly passing off the

---

[2] "[F]or more than 100 years New Jersey has 'recognized and supported an individual's right to prevent unauthorized, commercial appropriation' of his/her name or likeness, resulting in a developed body of common law." *Faulkner v. Hasbro, Inc.*, No. 15-6518 (KSH)(CLW), 2016 WL 3965200, at *1 (D. N.J. July 21, 2016).

Bootleg Merchandise as being affiliated with, sponsored by, or approved by Plaintiffs and/or BTS, when in fact it is not.

50.    The aforesaid acts by Defendants likely to cause the purchasing public to believe that the sale of such Bootleg Merchandise is affiliated with, sponsored by, or approved by Plaintiffs and/or BTS and that such Bootleg Merchandise is subject to the same quality control and regulation required by BTS and Plaintiffs, when in fact it is not.

51.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered injury in fact, as described herein.

52.    Plaintiffs have no adequate remedy at law and have suffered, and will continue to suffer, irreparable harm and damage as a result of Defendants' aforesaid acts, which, if not enjoined, will cause injury and monetary loss in an amount presently incalculable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek relief as follows:

1.    That Defendants, their agents, servants, employees, officers, attorneys, successors, and assigns, and all persons acting in concert with Defendants, or on their behalf, be enjoined preliminarily during the course of this litigation and permanently, from:

15

a.      manufacturing, distributing, selling, offering for sale, holding for sale or advertising any products bearing the name, trademark, or likeness of BTS or any colorable variation thereof; and

b.      representing that any article of merchandise manufactured, distributed, sold, held for sale or advertised by them is sponsored or authorized by Plaintiffs.

2.      That this Court authorize agents of Plaintiffs, the local and state police, and/or any persons acting under their supervision, to seize and impound any and all Bootleg Merchandise which the Defendants attempt to sell, distribute or hold for sale at, within, or in the vicinity of the East Rutherford Shows and the other U.S. concert performances on the current Tour, before, during and after said concerts.

3.      That Defendants deliver up for destruction all Bootleg Merchandise bearing the name, trademark, or likeness of BTS.

4.      That Defendants pay to Plaintiffs damages in an amount to be determined based upon Plaintiffs' loss of income from Defendants' unauthorized activities.

5.      For an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and other operation of law.

6.      That Plaintiffs have such other and further relief as the Court deems to be reasonable, necessary and just.

16

Dated:  July 10, 2026

Respectfully submitted,

LOEB & LOEB LLP
JOHN A. PISKORA
FRANK D. D'ANGELO
JEFFREY C. PRYSTOWSKY


By:   /s/ *John A. Piskora*

    John A. Piskora (NJ ID 005412001)
    jpiskora@loeb.com
    Frank D. D'Angelo (*pro hac vice
    forthcoming*)
    fdangelo@loeb.com
    Jeffrey C. Prystowsky (*pro hac vice
    forthcoming*)
    jprystowsky@loeb.com
    LOEB & LOEB LLP
    345 Park Avenue
    New York, NY  10154
    Telephone:  +1 212-407-4000
    Facsimile:  +1 212-407-4990

Attorneys for Plaintiffs,
HYBE Co. Ltd., BIGHIT MUSIC Co.
Ltd., and HYBE America, Inc.